```
UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF NEW YORK
------------------------------------------------------
In re
            DIANE V. HEUBUSCH                          04-15927 B

                    Debtor                      DECISION & ORDER
------------------------------------------------------
DIANE V. HEUBUSCH,

                    Plaintiff

        v.                                       AP 05-1001 B

NOVASTAR MORTGAGE, INC.,

                    Defendant and
                    Third-Party Plaintiff

        v.

CITIFINANCIAL COMPANY

                    Third-Party Defendant
------------------------------------------------------
```

                Barry M. Sternberg, Esq.
                Suite 202
                4925 Main Street
                Williamsville, New York 14212
                Attorney for Plaintiff

                Hiscock & Barclay, LLP
                Bruce S. Zeftel, Esq., of counsel
                1100 M & T Center
                Three Fountain Plaza
                Buffalo, New York 14203-1414
                Attorneys for Novastar Mortgage, Inc.

                Davidson, Fink, Cook, Kelly & Galbraith, LLP
                Walter R. Capell, Esq., of counsel
                Suite 1700
                28 East Main Street
                Rochester, New York 14614
                Attorneys for Citifinancial Company (DE)

                Albert J. Mogavero, Esq.
                Sixth Floor
                110 Pearl Street
                Buffalo, New York 14202
                Chapter 13 Trustee

Bucki, U.S.B.J.

Pursuant to the Second Circuit's decision in *Pond v. Farm Specialist Realty (In re Pond)*, 252 F.3d 122 (2001), the debtor seeks to avoid the lien of a third mortgage on her home. This seemingly simple request has opened a Pandora's box of challenges to the priority of the three outstanding liens. In particular, the present dispute involves the competing claims of the holder of two previously unrecorded mortgages and a subsequent lender who allegedly had notice of those unrecorded instruments at the time that it recorded its own mortgage.

On July 18, 2003, Diane Heubusch executed two notes promising repayment of money that Novastar Mortgage, Inc. ("Novastar"), had loaned to her. The larger of these notes, in the amount of $60,000, was to be secured by a first mortgage covering Heubusch's residence on Aris Avenue in the Town of Cheektowaga. The smaller note evidenced an indebtedness of $11,000, and was to be secured by a second mortgage on the same property. Unfortunately, Novastar did not record these mortgages until December 16, 2003, when it perfected the larger lien at 9:45 AM, and the smaller lien at 9:47 AM. Meanwhile, on October 21 and again on December 8 of 2003, Ms. Heubusch submitted loan applications to either of two affiliated companies known as Citifinancial, Inc., and Citifinancial Company (DE). Both entities operated out of the same office in West Seneca, New York; both were serviced by the same employees; together they maintained a joint file for the loan applications that Ms. Heubusch submitted. Collectively, these two entities will herein be referred to as "Citifinancial."

Shortly after Heubusch arrived at the Citifinancial office on October 21, a loan processor ordered a credit report, which was promptly transmitted to that employee's computer. Essential terms of this report were then incorporated into a credit application, which Ms. Heubusch signed. Notably, the application recited

the existence of two outstanding loans from an entity whose name was abbreviated as "Novastar Mortga." Additionally, in a section dealing with housing obligations, the application listed Novastar as having both a first and second lien. Unwilling to take a third position on real estate, Citifinancial, Inc., agreed to advance $7,500 on a loan to be secured by an otherwise unencumbered interest that Heubusch held in a 1992 Chevrolet Lumina. Citifinancial prepared the necessary loan documents, which Heubusch then signed prior to leaving the lender's office.

Hoping to borrow more money, Heubusch returned to Citifinancial's office on December 8. On this occasion, a different employee downloaded a new credit report, which listed only the smaller of the two loans from Novastar. For Heubusch's review and approval, Citifinancial then generated a credit application that made no mention of the larger Novastar loan. Despite this error, Heubusch signed the application. Based on that application, Citifinancial Company (DE) agreed to loan the total sum of $27,232.47, to be secured by a mortgage on the debtor's real property on Aris Avenue. As a further condition for this loan, Citifinancial required Heubusch to use part of the proceeds to satisfy its previous loan. After receiving a title report showing no outstanding mortgages, Citifinancial Company (DE) closed the transaction. It then recorded its mortgage on December 11, 2003, a date five days prior to the recording of the two mortgages to Novastar.

Diane Heubusch filed a petition for relief under chapter 13 of the Bankruptcy Code on August 6, 2004. Pursuant to 11 U.S.C. §§ 506 and 1322 and under the authority of *Pond v. Farm Specialist Realty*, Heubusch then moved to avoid the smaller of Novastar's two mortgages. At the request of Novastar, this court converted the debtor's motion into an adversary proceeding. Novastar filed an answer to the debtor's request for relief, and further filed a third party

complaint against Citifinancial Company, by which Novastar asked that this court determine relative priority as between Citifinancial and Novastar. Citifinancial Company (DE) then appeared and answered.

In *Pond v. Farm Specialist Realty*, the Court of Appeals ruled that a chapter 13 plan may avoid a mortgage that encumbers the debtor's residence, but only if that mortgage is undersecured for the entire value of the obligation. The debtor may not avoid a lien on her residence when the collateral's value provides security for any portion of the underlying debt. In the present instance, the parties conceded that the value of the debtor's residence exceeded the sum of the Citifinancial loan and the smaller of the Novastar obligations. To the extent that the larger Novastar mortgage holds third priority, it would still be partially collateralized and would not be subject to avoidance. But the parties also acknowledged that the property's value might not exceed the sum of the larger Novastar mortgage and one of either of the other mortgages. To the extent that the larger Novastar mortgage holds either first or second priority, the debtor might be able to avoid the third lien if the property's value were sufficiently small. Rather than to try needlessly a difficult issue of valuation, I directed the parties to first present proof and argument concerning the relative priority of the three outstanding mortgages. Only if necessary would I determine the value of the Aris Avenue property.

Citifinancial contends that its mortgage holds first priority, by reason of the fact that it was first to be recorded. Novastar responds that New York is a race/notice jurisdiction, that Citifinancial received notice of both Novastar loans when Heubusch first sought credit in October of 2003, and that this notice precludes any right to priority for the mortgage that Citifinancial subsequently granted less than two months later. In reply, Citifinancial asserts that the December credit report provides inadequate notice of the Novastar mortgages,

and that Citifinancial appropriately relied upon the title report. Alternatively, Citifinancial argues that it had no obligation in December to review the October loan application, and that Heubusch's second loan application made reference only to the smaller of the two Novastar mortgages. Consequently, Citifinancial would conclude that its mortgage holds priority over at least the larger of the Novastar liens. Meanwhile, the debtor insists that she should not become an innocent victim of Novastar's failure to perfect its lien, and that priority should follow the sequence of recording.

New York Real Property Law §291 establishes the rule of priority for interests in real property. In relevant part, this section provides as follows:

> A conveyance of real property, within the state, on being duly acknowledged by the person executing the same, or proved as required by this chapter, and such acknowledgment or proof duly certified when required by this chapter, may be recorded in the office of the clerk of the county where such real property is situated, and such county clerk shall, upon the request of any party, on tender of the lawful fees therefor, record the same in his said office. *Every such conveyance not so recorded is void as against any person who subsequently purchases . . . the same real property or any portion thereof . . . in good faith and for a valuable consideration, from the same vendor or assignor, his distributees or devisees, and whose conveyance, contract or assignment is first duly recorded, and is void as against the lien upon the same real property or any portion thereof arising from payments made upon the execution of or pursuant to the terms of a contract with the same vendor, his distributees or devisees, if such contract is made in good faith and is first duly recorded."*

(emphasis added). Real Property Law §290(1) defines conveyance to include a mortgage. Accordingly, an unrecorded mortgage is void as against the interest of a subsequent mortgagee who satisfies three conditions: first, the subsequent mortgage must be received in good faith; second, the subsequent mortgage must be received in exchange for a valuable consideration; and third, the subsequent mortgage must be recorded first.

In the present instance, Citifinancial clearly satisfies the second and third conditions for lien priority. It advanced valuable consideration to Diane Heubusch and recorded its mortgage prior to any recording of mortgages given to Novastar. What the parties now dispute is whether Citifinancial acquired its mortgage in good faith.

When Heubusch first applied for a loan from Citifinancial in October of 2003, Citifinancial received notice about the existence of the two Novastar mortgages. Indeed, for this reason, Citifinancial offered only to extend credit that would be secured by Heubusch's automobile. Later, when Citifinancial gave a mortgage loan to Heubusch in December of 2003, its loan officer did not consider the larger of the two Novastar mortgages. The testimony indicated that although the loan file included the credit report from October, the loan officer did not look at that prior report but instead directed her attention to the new credit report showing only the smaller Novastar loan. She then verified this perception, when she obtained a title report showing no encumbrance of record upon the debtor's real estate.

In considering Heubusch's loan application in December 2003, Citifinancial's loan officer knew about the existence of the smaller Novastar mortgage. As to this smaller mortgage, Citifinancial could not acquire, in good faith, a superior position. Hence, the smaller Novastar mortgage will take priority over Citifinancial's lien. The more difficult issue is whether the knowledge acquired in October should be treated as knowledge sufficient to preclude the good faith of Citifinancial in December with respect to the larger Novastar mortgage.

As a general rule, the knowledge of an agent is imputed to its principal. *See* 2A N.Y. Jur. 2d Agency §296 (1998). But in the words of Justice Cardozo, this inference requires "the necessary concurrence of memory and information."

*Title Guarantee & Trust Co. v. Pam*, 232 N.Y. 441, 457 (1922). Courts will impute to a principal only that knowledge about which its agent was cognizant at the time of the disputed event or transaction. *The Distilled Spirits*, 78 U.S. 356 (1870), *Phelan v. Middle States Oil Corp.*, 210 F.2d 360 (2nd Cir. 1954). Because Citifinancial's loan officer was unaware of the larger Novastar mortgage at the time she approved Heubusch's credit application in December, the prior disclosure of that Novastar mortgage will not speak to the lender's good faith.

The present facts are analogous to those in *Constant v. University of Rochester*, 111 N.Y. 604 (1889). In that case, Constant claimed that her unrecorded mortgage should have priority over a subsequent but recorded mortgage given to the University of Rochester. The same attorney had represented Constant and the University with regard to the execution of their respective mortgages. Constant argued that the attorney's prior knowledge about Constant's unrecorded mortgage should be imputed to the University, as the principal for whom the attorney was serving as agent when he recorded the University's mortgage. However, the trial record also contained evidence that "would tend to show very strongly that [the attorney] had no recollection whatever of the existence of the Constant mortgage as an existing lien at the time he took the mortgage to the university." 111 N.Y. at 613. The Court of Appeals held that priority would depend upon whether the existence of the earlier mortgage was a fact present in the "mind and recollection" of the attorney at the time of the execution of the subsequent mortgage. 111 N.Y. at 607. Finding that the trial judge had erroneously presumed an attribution of knowledge to the University, the Court of Appeals reversed a decision in favor of Constant and remanded the matter for a new trial.

In the present instance, the evidence showed that employees approved and closed the Citifinancial mortgage at a time when those employees lacked

knowledge of the larger Novastar mortgage. Admittedly, a different employee had such knowledge in October, and such knowledge might have been brought to memory upon a review of papers from the previous transaction. The outcome, however, depends upon the mind and recollection of the employees during the process of loan approval and closing. Having had no present awareness of the larger Novastar lien, the responsible loan officer had no knowledge which could impair the good faith of Citifinancial.

In its memorandum of law, Novastar cites numerous cases where the court recognized that notice or knowledge of a prior lien can operate to negate the good faith of a subsequent purchaser or lienor. For example, in *Andy Assocs. v. Bankers Trust*, 49 N.Y.2d 13, 16-17 (1979), the Court of Appeals observed that under Real Property Law §291, "an unrecorded conveyance of an interest in real property is deemed void as against a subsequent good faith purchaser for value who acquires his interest without actual or constructive notice of the prior conveyance." About this general rule, I have no quarrel. Rather, the present dispute challenges us to give meaning to the notion of actual notice. Novastar has referenced no authority for the proposition that an agent's prior knowledge will necessarily constitute notice in the context of all subsequent transactions. To overcome the presumed priority of an earlier recorded mortgage, Novastar must instead demonstrate that Citifinancial, as of the moment of the closing of its own mortgage, had cognizance of information sufficient to give actual notice of the existence of an earlier unrecorded mortgage. We must return, therefore, to the principal stated in *Constant v. University of Rochester*, that any finding that a mortgagee "still retains [such prior knowledge] and has it present to his mind will depend upon facts and other circumstances." 11 N.Y. at 609.

The present circumstances include the fact that Citifinancial was an institutional lender with established standards and procedures for the processing

of credit applications. Asked to process a high volume of loans, its employees can not reasonably be expected to maintain the same level of recall as would an individual who makes a single loan. At the trial, Citifinancial's branch manager confirmed that she had followed customary protocols, that those protocols required employees to disregard any credit report that was more than 30 days old, and that the processor therefore procured a new credit report in December, rather than rely on the credit report that had been created 48 days earlier in October. Testimony indicated that the Citifinancial computer would randomly select one of three credit reporting agencies for production of the credit report. By pure happenstance, a different agency created the December credit report, which lacked critical information that was contained in the October report. By not reviewing the earlier report, the responsible employee did not know about the larger Novastar loan. Thus, Citifinancial had no present recognition of the existence of that unrecorded mortgage, at the time of the processing and closing of Citifinancial's own loan in December.

Based upon all of the evidence, I must conclude that Citifinancial's loan processors followed the lending protocols of their employer. Of course, Citifinancial could have established a different policy that would have required a thorough investigation of prior applications. It did not. However, this omission does not speak to good faith, but at most to insufficiencies of procedure. A lender may choose to assume the risk of inadequate title or credit review, but so long as it acts in good faith, any mortgage received to secure a valuable consideration will still take priority over an unrecorded lien.

Real Property Law §291 contains no explicit reference to the effect of actual notice on the priority of a recorded instrument. Rather, notice has relevance only as an indication of good faith. In the present instance, the evidence supports the conclusion that in December 2003, Citifinancial extended

credit with knowledge of the smaller Novastar mortgage but without knowledge of the larger Novastar mortgage. Hence, Citifinancial satisfies the requirement of good faith with respect only to that larger loan. As among the three outstanding mortgages, the smaller Novastar mortgage will enjoy first priority, the Citifinancial mortgage will enjoy second priority, and the larger Novastar mortgage will enjoy third priority. Because the parties concede that the value of the real property exceeds the sum of the first and second liens, the third lien of Novastar is at least partially secured. Pursuant to the decision in *Pond v. Farm Specialist Realty*, therefore, this court must deny the debtor's application for lien avoidance in all respects.

By reason of Novastar's failure to record its mortgages in a timely fashion, Diane Heubusch loses the opportunity to avoid any portion of the liens that encumber her residence. This outcome, however, is a consequence of the debtor's own making. In December 2003, Ms. Heubusch signed a loan application which failed to disclose the existence of the larger Novastar mortgage. Even though Heubusch did not prepare the application, her signature confirmed her acceptance of its representations. For her false representations, Heubusch must now suffer the consequences of inadequate disclosure to Citifinancial.

So ordered.

Dated:  Buffalo, New York                        /s/   CARL L. BUCKI
        June 30, 2006                                   U.S.B.J.